**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AYANNA BLUE**, | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  10-1504 (JEB) |
| **DISTRICT OF COLUMBIA, et al.,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Plaintiff Ayanna Blue was an 18-year-old student at the Transition Academy at Shadd, a school within the District of Columbia Public Schools (DCPS) for emotionally disturbed students, when she became involved in a sexual relationship with her teacher, Robert Weismiller. That relationship forms the basis of Plaintiff's current suit, in which she brings myriad federal and state causes of action against Weismiller as well as the District of Columbia, DCPS, and former DCPS Chancellor Michelle Rhee.  The last three, collectively referred to as the "District Defendants," have now filed a Motion to Dismiss.  As Plaintiff's federal claims are all legally deficient, and as her state-law claims are barred by her failure to provide timely notice to the District, the Court will grant the Motion.  The case may proceed against Weismiller alone.

## I.      Background

In her Second Amended Complaint, Plaintiff alleges that while she was a student in his class, Weismiller, then a DCPS teacher, initiated and engaged in a sexual relationship with her from November 2008 to April 2009.  Sec. Am. Compl., ¶¶ 19-20.  During this time, Plaintiff became pregnant and in late 2009 gave birth to Weismiller's daughter.  Id., ¶ 21.  In May 2009,

1

DCPS officials learned of Plaintiff's pregnancy and conducted an investigation into her relationship with Weismiller.  Id., ¶ 29.  Weismiller denied having had a sexual relationship with Plaintiff, and while other DCPS teachers and staff members reported frequently seeing Plaintiff and Weismiller alone in his classroom, sometimes with the lights off, no one reported observing any inappropriate physical contact between them.  See id., ¶¶ 30-36.  Following this investigation, DCPS concluded that there was no "definitive proof" Weismiller had engaged in any wrongdoing.  Id., ¶¶ 38-39.  He was nevertheless fired the following October as part of a system-wide reduction in force.  Id., ¶ 14.

Plaintiff also alleges that she was not the first student with whom Weismiller initiated a sexual relationship.  Beginning in 1976, she pleads, while teaching high school in Prince George's County, Maryland, Weismiller initiated sexual relationships with two of his students. Id., ¶ 24.  In 1984, while teaching middle school in Prince William County, Virginia, Plaintiff alleges Weismiller sexually assaulted two eighth grade students, which resulted in a lawsuit against him and the school board and his subsequent termination.  Id., ¶ 26.  Prior to hiring Weismiller, Plaintiff asserts, Defendants in the present case "knew or should have known that Weismiller had engaged in inappropriate sexual relationships with students in the past."  Id., ¶ 61.  With respect to the Transition Academy at Shadd, Plaintiff alleges that it is "a failure, where students are inadequately supervised and subject to injury."  Id., ¶ 46.

On September 7, 2010, Plaintiff brought this action against the District of Columbia, DCPS, and Rhee, in her capacity as former Chancellor of DCPS, and against Weismiller, alleging negligent supervision, negligent hiring and retention, and a violation of 20 U.S.C. § 1681 *et seq*. against the District Defendants, and intentional infliction of emotional distress, breach of fiduciary duty, and a violation of 42 U.S.C. § 1983 against all Defendants.  Plaintiff

filed her Amended Complaint on September 21, 2010, and her Second Amended Complaint on

May 11, 2011.  Now before the Court is the District Defendants' Motion to Dismiss; Defendant

Weismiller has not moved to dismiss the claims against him.  For the reasons set forth below, the

Court will grant the District Defendants' Motion.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a

complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendants'

Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must

grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United

States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice pleading rules are "not

meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347

(2005), and she must thus be given every favorable inference that may be drawn from the

allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an

inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n,

456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)

(internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," <u>Twombly</u>, 550 U.S. at 555 (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

### III.    Analysis

The District Defendants first contend that Plaintiff improperly names DCPS and former Chancellor Rhee as defendants in this action.  Next they challenge Plaintiff's federal claims under 42 U.S.C. § 1983 and 20 U.S.C. § 1681 on the ground that she has failed to sufficiently plead the required elements.  Finally, they maintain that Plaintiff's state-common-law claims must be dismissed because she failed to comply with the notice requirements of D.C. Code § 12-309.  The Court will address each of these arguments in turn.

### A.    <u>DCPS and Chancellor Rhee</u>

#### 1.    *DCPS*

The District Defendants first move to dismiss DCPS as a defendant in this suit on the ground that "DCPS is a subordinate governmental agency within the District of Columbia government and as a result is *non sui juris*."  Mot. at 5 (citing <u>Hinson ex rel. N.H. v. Merritt Educational Center</u>, 521 F. Supp. 2d 22, 34 (D.C. 2007)).  Plaintiff responds that DCPS is a proper defendant in cases alleging municipal liability under <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978).  <u>See</u> Opp. at 27-28.  Plaintiff cites <u>Monell</u> for the proposition that "school entities, such as a school board or school system, are 'persons' subject to suit under 42 U.S.C. § 1983."  <u>Id.</u> at 28 (quoting <u>Monell</u>, 436 U.S. at 690, 697-99).  This is the sole authority she cites in support of her position that DCPS is a proper party to this suit.

Courts in this District have held on numerous recent occasions that DCPS is *non sui juris* – that is, non-suable as an entity separate from the District of Columbia. See, e.g., U.S. ex rel. Davis v. District of Columbia, 591 F. Supp. 2d 30, 40 (D.D.C. 2008) (DCPS may not be sued as separate entity); Hinson, 521 F. Supp. 2d at 34 ("a number of courts addressing this very issue have concluded that DCPS is not a suable entity under the D.C.Code") (collecting cases); Bowers v. Janey, 468 F. Supp. 2d 102, 105 n.3 (D.D.C. 2006) ("case law has indicated that the DCPS 'is not a suable entity'").

In another case from this District, Winder v. Erste, No. 03-2623, 2005 WL 736639 (D.D.C., Mar. 31, 2005), Judge John Bates considered and rejected an argument similar to the argument Plaintiff makes here – to wit, that Monell "stands for the broad proposition that school systems are directly subject to liability as 'persons' under § 1983." Id. at *3. Judge Bates clarified that the Supreme Court's decision in Monell

> does not indicate that municipal liability must attach to school boards directly, where another municipal entity is the entity legally responsible for the school board's liabilities. Thus, where, as here, municipal liability may attach simply by suing the proper municipal defendant -- the District of Columbia or one of its officials, as opposed to DCPS -- Monell does not mandate that § 1983 actions must lie against school boards.

Id. at *4. He thus concluded: "Because DCPS is not a suable entity under the D.C. Code, and federal law does not require DCPS to be the named municipal defendant, the Court grants DCPS's motion to dismiss." Id.

As this Court concurs with these decisions, all of Plaintiff's claims against DCPS must be dismissed. See Hobby v. District of Columbia, No. 07-1061, 2007 WL 4233627, at *1 n.1 (D.D.C. Nov. 29, 2007) ("Because bodies within the District of Columbia government are not suable as separate entities . . . DCPS is dismissed from this case.") (internal citations omitted). The proper party against whom Plaintiff must bring her claims is the District of Columbia itself.

See Winder, 2005 WL 736639, at *4 ("the proper municipal defendant [is] the District of Columbia . . . as opposed to DCPS"); Bowers, 468 F. Supp. 2d at 105 n.3 ("The employer in this situation would be the District of Columbia rather than the DCPS, as case law has indicated that DCPS 'is not a suable entity.'").

2.      *Chancellor Rhee*

The Court also grants the District Defendants' Motion to Dismiss Plaintiff's claims against Michelle Rhee in her official capacity as former Chancellor of DCPS.  "A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself."  Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996).  "'Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity[,]' courts routinely dismiss claims against the officials to conserve judicial resources when the entity itself is also sued."  Trimble v. District of Columbia, 779 F. Supp. 2d 54, 58 n.3 (D.D.C. 2011) (quoting Robinson v. District of Columbia, 403 F. Supp. 2d 39, 49 (D.D.C. 2005)).  While naming Chancellor Rhee as a defendant may thus not be legally improper, see DL v. District of Columbia, 450 F. Supp. 2d 21, 24 (D.D.C. 2006), the Court will dismiss Plaintiff's claims against her as redundant.

The Court now considers whether Plaintiff's Second Amendment Complaint successfully states claims against the District of Columbia.

B.      Federal Claims

Plaintiff asserts causes of action against the District of Columbia under two federal statutes, 42 U.S.C. § 1983 and 20 U.S.C. § 1681 (Title IX).  As this Court's subject matter jurisdiction derives from these federal claims, the Court will address them first.  See Sec. Am. Compl., ¶ 10 (citing 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a)).

1.      *42 U.S.C. § 1983*

Section 1983 provides for a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must plead facts sufficient to allege 1) "the violation of a right secured by the Constitution and the laws of the United States" and 2) "that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  A municipality, including the District of Columbia, may be sued as a person under § 1983.  Monell, 436 U.S. at 690; see also Dorman v. District of Columbia, 888 F.2d 159, 162 (D.C. Cir. 1989).

Section 1983, however, only imposes liability on a municipality for its own illegal actions – *i.e.*, "'action [taken] pursuant to official municipal policy'" – that "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 691-92); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered").  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick, 131 S. Ct. at 1359. A municipality may not, however, be held liable under § 1983 on a theory of *respondeat superior* or vicarious liability for the acts of its employees.  Monell, 436 U.S. at 691-92.

Municipal liability under Monell also requires a showing of causation – specifically, a § 1983 plaintiff must plead facts to support an inference that some official government policy or

custom "'cause[d]' an employee to violate another's constitutional rights." Monell, 475 U.S. at

692 (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)).  In other words, "a municipality can

be liable under § 1983 only where its policies [or customs] are the 'moving force [behind] the

constitutional violation.'"  City of Canton, Ohio v. Harris, 489 U.S. 378, 388-389 (1989)

(quoting Monell, 436 U.S. at 694; Polk County v. Dodson, 454 U.S. 312, 326 (1981)).  The D.C.

Circuit has described the inquiry as:

> whether [Plaintiff] sufficiently alleged that a District custom or policy
> caused the claimed violations of his constitutional rights.  Causation
> would exist if, for instance, the municipality or one of its policymakers
> explicitly adopted the policy that was "the moving force of the
> constitutional violation." . . . Or a policymaker could knowingly ignore a
> practice that was consistent enough to constitute custom.  . . .  Or the
> municipality may not have responded 'to a need . . . in such a manner as to
> show "deliberate indifference' to the risk that not addressing the need will
> result in constitutional violations."

Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) (internal quotations and

citations omitted).

Plaintiff alleges that the District is liable under § 1983 for three separate violations of her

constitutional rights – her substantive due process right to bodily integrity and her right to equal

protection of the laws based on both her gender and her status as an emotionally disturbed

student.  While Plaintiff pleads all three violations in Count V of her Second Amended

Complaint, they require separate analyses.

a.  Substantive Due Process

Plaintiff first contends that the District's "decisions, customs, policies or practices have

violated [her] rights under the Due Process Clause of the Fifth Amendment to be free from

conduct that violates her bodily integrity."  Sec. Am. Compl., ¶ 87.  While neither the Supreme

Court nor the D.C. Circuit has ruled on whether the right to bodily integrity includes the right to

be free from sexual abuse, courts in several Circuits have sustained substantive due process

claims arising from a primary or secondary student's sexual relationship with a teacher.  See,
e.g., Stoneking v. Bradford Area School District, 882 F.2d 720, 727 (3d Cir. 1989); Doe v.
Taylor Independent School District, 15 F.3d 443, 451-52 (5th Cir.1994); Kinman v. Omaha
Public School District 171 F.3d 607, 611 (8th Cir. 1999).

      This case differs from those cited above in that Plaintiff here was already 18 years old
when her sexual relationship with Weismiller began; in other words, she was no longer a minor.
Sec. Am. Compl., ¶ 13.  The Court is aware of only one case in which a court squarely addressed
the question of whether an 18-year-old high school student could state such a claim.  See Henry
v. Toups, No. 08-939, 2010 WL 3398857 (E.D. La. Aug. 23, 2010).  In that case, Toups, a high
school band teacher, was sued by two of his students with whom he had engaged in sexual
relations, including Henry, who was already 18 at the time.  Id. at *1.  Toups argued that his
relationship with Henry amounted to consensual sex between adults and therefore could not be
the basis for a constitutional tort.  Id. at *2.  Citing Doe v. Taylor Independent School District,
15 F.3d 443, the court found that the "Fifth Circuit does not distinguish between the age of
school children": "Jane Doe's substantive due process claims are grounded upon the premise that
school children – [it] doesn't say school children who are under 18 – school children have a
liberty interest in their bodily integrity that is protected by the due process laws of the Fourteenth
Amendment, and upon the premise that physical abuse by a school employee violates that right."
Id. at *7.  Conversely, in Douglas v. Brookville Area School District, No. 10-1087, 2011 WL
6116449 (W.D. Pa. Dec. 8, 2011), the court questioned whether the "seemingly consensual
nature" of a relationship between a fifteen-year-old student and a teacher at her high school
should weigh against a finding that the teacher's actions were conscience-shocking and a
violation of the student's right to bodily integrity, writing, "[T]he Court is 'reluctant to expand

the concept of substantive due process' beyond the context of coercive activities without the benefit of adequate briefing from the parties." Id. at *15.

Although this is an interesting question, the Court need not resolve it; indeed, the District has chosen not even to pursue this line of argument. As the District has not raised such a challenge, and in the absence of clear authority, the Court will assume without deciding that Plaintiff can allege a substantive due process violation relating to bodily integrity against Weismiller and, to the extent the violation was caused by a policy or custom of DCPS, against the District. The Court thus turns to whether Plaintiff has adequately alleged municipal liability in connection with such a violation.

Plaintiff argues that she has adequately pled three District decisions, customs, policies, or practices that support her claim that the District is liable for Weismiller's violation of her bodily integrity: 1) "failing to investigate Weismiller's background before hiring him," 2) "cultivating an atmosphere where teachers are afraid to report abuse," and 3) "failing to terminate Weismiller for cause after learning of his misconduct." Opp. at 15; see Sec. Am. Compl., ¶¶ 82-84, 86-87.

i.      Failure to investigate background

Plaintiff has not alleged sufficient facts to support her claim that the District has a "custom, policy or practice of failing to adequately investigate the backgrounds of its teachers before hiring them" that caused her to suffer a violation of her right to bodily integrity. Sec. Am. Compl., ¶¶ 82, 87. All that she has alleged is that, since 1976, Weismiller has been involved in "inappropriate sexual relationships with at least four other students at other schools in the Washington, D.C. area," and that the District, DCPS, and Rhee "knew or should have known that Weismiller had engaged in inappropriate sexual relationships with students in the past." Id., ¶¶ 23, 61.

Courts that have considered the elements of a § 1983 claim alleging liability arising from a municipality's hiring policies or practices have concluded that, "[i]n order to prove that a municipal hiring or training policy violated his rights under § 1983, [a plaintiff] must show that (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 388-92 (1989)); see also Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996). Plaintiff here must thus plead the existence of a DCPS policy or custom of inadequately checking the backgrounds of teachers before hiring them.

She has not done so.  Plaintiff does not identify any official District policy on pre-hiring background checks of DCPS teachers or allege how a District policymaker was deliberately indifferent in adopting such a policy. Opp. at 14-15.  Other than Weismiller's, she does not even point to any other background checks that she alleges were performed inadequately that could establish a custom "so widespread as to have the force of law." Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997).  Realizing that she has not identified any actual District policy or practice, Plaintiff falls back on the argument that "[i]t is well-established that a plaintiff can state a valid municipal liability claim by alleging a decision by a municipality to hire an employee without adequately investigating that employee's background." Opp. at 15 (citing Brown, 520 U.S. at 412).  In other words, Plaintiff grounds her claim on the single hiring of Weismiller.  Plaintiff's reading of Brown, however, overstates the Supreme Court's holding in that case.  Far from recognizing such a well-established claim, the Court in Brown merely considered how a plaintiff might plead such a claim without causing

municipal liability based on policy or custom to collapse into *respondeat superior* liability.

Brown, 520 U.S. at 412.  The Court "assum[ed] without deciding that proof of a single instance of inadequate screening could . . . trigger municipal liability," but found the evidence before it insufficient to sustain such a claim.  Id.

Underlying the Supreme Court's analysis in Brown, however, was the County's stipulation that Sheriff Moore, who made the hiring decision in question, was a final municipal policymaker.  Id. at 397.  This concession provided the key to unlocking the plaintiff's potential municipal-liability claims.  The Supreme Court has held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  The standard for such a claim, however, is stringent.  In such a case, "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Id. at 483.  Limiting the single decisions that trigger municipal liability to those made by final policymakers is necessary to prevent the liability described by Monell and its progeny from being transformed into *respondeat superior* liability.  It is thus necessary in such cases to distinguish between "an exercise of policymaking authority and an exercise of delegated discretionary policy-implementing authority."  Brown, 520 U.S. at 434 (emphasis in original); see also Triplett v. District of Columbia, 108 F.3d 1450, 1453 ("The only acts that count (though they may include inaction giving rise to or endorsing a custom) are ones by a person or persons who have 'final policymaking authority [under] state law.'") (quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989)).

Even if this Court were to read <u>Brown</u> and <u>Pembaur</u> broadly, however, Plaintiff has not alleged here that the decision to hire Weismiller without an adequate background check was made by a final municipal policymaker and could therefore be properly attributable to the District.  <u>See</u> Sec. Am. Compl., ¶ 82 (District has "a custom, policy or practice of failing to adequately investigate the backgrounds of its teachers before hiring them"); <u>cf</u>. <u>id.</u>, ¶ 86 ("the decision <u>not to terminate</u> Weismiller after DCPS investigated his sexual relationship with Plaintiff was made by a final municipal decisionmaker and is properly attributable to" the District) (emphasis added); <u>cf. also</u> <u>Singletary v. District of Columbia</u>, 685 F. Supp. 2d 81, 90 (D.D.C. 2010) ("[s]ignificantly, the District does <u>not</u> dispute that the [Parole] Board was the final policymaker regarding parole revocation nor does it challenge the sufficiency of Singletary's allegation on that point") (emphasis in original).  For this reason, she has failed to state a claim for municipal liability based on a policy manifested through a final policymaker's single hiring decision.

ii.       Teachers afraid to report abuse

Plaintiff's second argument on substantive due process is similarly unavailing.  She does not plead a single fact in support of her claim that the District has a custom of "cultivating an atmosphere where teachers are afraid to report abuse," making this allegation solely "upon information and belief."  Sec. Am. Compl., ¶ 84. While "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>Twombly</u>, 550 U.S. at 555, Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S.Ct. at 1949 (internal quotation omitted); <u>see also</u> <u>Atchison v. District of Columbia</u>, 73 F.3d 418, 422-423, (D.C. Cir. 1996) ("a section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a

municipal policy or custom").  Without any factual support for her claims that DCPS teachers are

afraid to report abuse in schools, that DCPS officials cultivated an atmosphere that created such a

fear, or that this fear led to underreporting of abuse on other occasions, the Court cannot

reasonably infer that any misconduct in the present case was the result of such a District custom,

policy, or practice.

iii.       Failure to terminate Weismiller

Plaintiff's final argument, based on DCPS's failure to terminate Weismiller in light of the

events underlying her claims, also comes up short.  Here she concededly does allege that "the

decision not to terminate Weismiller after DCPS investigated his sexual relationship with

Plaintiff was made by a final municipal decisionmaker and is properly attributable to the

District." Sec. Am. Compl., ¶ 86.  Plaintiff, however, has not pled the identity of the District

official who made the decision not to terminate Weismiller and argues that she need not do so to

withstand Defendants' Motion.  In any event, whether a particular District official has "final

policymaking authority is a question of state law." Pembaur, 475 U.S. at 483.  A particular

official "may have discretion to hire and fire employees without also being the [District] official

responsible for establishing county employment policy," and "[t]he fact that a particular official

– even a policymaking official – has discretion in the exercise of particular functions does not,

without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-

82, 484 n.12.  The Court need not decide, however, whether Plaintiff has sufficiently alleged that

a final policymaker is responsible for the decision not to fire Weismiller because her claim here

fails on another ground: she has not pled causation.

Even if the decision to retain Weismiller following the investigation into his relationship

with Plaintiff was made or ratified by a final District policymaker, it must also be "the moving

14

force behind the injury of which [she] complains" in order to subject the District to § 1983

liability.  Brown, 520 U.S. at 405; see also Gonzales v. Ysleta Independent School District, 996

F.2d 745, 762 n.13 (5th Cir. 1993) ("The district court also should have instructed the jury that

the school district could be held liable if its policies were 'the "moving force [behind] the

constitutional violation."'") (quoting Canton, 489 U.S. at 389-90); Singletary, 685 F. Supp. 2d at

90.  The facts Plaintiff pleads in her Second Amended Complaint belie such an inference.  She

concedes that her relationship with Weismiller concluded in April 2009.  See Sec. Am. Compl., ¶

20.  Yet, DCPS did not investigate Weismiller's relationship with Plaintiff until May 2009 and

only thereafter made the decision not to terminate him.  Id., ¶¶ 29, 38-39.  As Plaintiff's alleged

harm in this case is her sexual relationship with Weismiller, a District decision made only after

that harm occurred cannot be said to be the "moving force" behind her injury.

Cases in which plaintiffs have sought to impose municipal liability on a school district for

failing to take disciplinary action against a teacher following allegations of sexual abuse or

harassment have arisen in cases involving two such incidents, in which the plaintiffs point to the

school district's improper response to a prior allegation of abuse as a policy that caused their

subsequent injury.  See Gonzales, 996 F.2d at 746 (parents of student molested by her first-grade

teacher alleged § 1983 claim based on school board's decision to keep teacher in classroom

following similar allegations of sexual abuse two years earlier); Riddick v. School Board of City

of Portsmouth, 238 F.3d 518, 522, 524 (4th Cir. 2000).

To the extent Plaintiff suggests that the decision not to fire Weismiller following the

District's investigation into his relationship with her is itself indicative of a wider District policy

of condoning sexual relationships between students and teachers that injured her here, such

general allegations, without more, will not sustain Plaintiff's claim against the District.  Plaintiff

contends that cases like <u>Henry v. County of Shasta</u>, 132 F.3d 512 (9th Cir. 1997), stand for the proposition that "the failure to reprimand an employee can constitute a municipal policy of deliberate indifference to constitutional violations."  Opp. at 19 (citing <u>Henry</u>, 132 F.3d at 519). Another court in the Ninth Circuit has since clarified, however, that while <u>Henry</u> indicates that such *post hoc* evidence of a final policymaker's response to a constitutional violation committed by a municipal employee is admissible as probative of governmental policy, such evidence is "one leg of a broader analysis.  In <u>Henry</u>, the plaintiff did not just present evidence of post-event deliberate indifference.  He also presented several declarations of others' similar experiences; significant evidence of bad intent by the state actors who violated his rights; and continued threats throughout his ordeal."  <u>Mejia v. City of Sacramento</u>, 177  Fed. Appx. 661, 665 (9th Cir. 2006).  This was also the case in <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436 (11th Cir. 1985), where the plaintiff's complaint alleged that the city had "adopted a custom by acting with gross indifference to the conduct engaged in by its police officers, including repeated failures to follow police procedure, unnecessary use of excessive force, roughness and shootings at the time of making arrests, intimidation during arrests and booking procedures, and drug trafficking."  <u>Id.</u> at 1442.  The Eleventh Circuit concluded that "a <u>persistent</u> failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of <u>Monell</u>."  <u>Id.</u> at 1443 (emphasis added).  If Plaintiff here bases her claim on a single decision by a final policymaker <u>after</u> her injury, these cases offer no support.

She has, therefore, failed to adequately plead the existence of a District policy or custom that caused a violation of her substantive due process right to bodily integrity.

b.  Equal Protection

Plaintiff next alleges that she has been denied equal protection of the law under the Fifth

Amendment's Due Process Clause, based either on her gender or her status as an emotionally

disturbed student.[1]  With respect to gender discrimination, Plaintiff alleges that by engaging in a

sexual relationship with her, Weismiller "violated Plaintiff's right . . . to be free from

discrimination on the basis of her sex," and that the District's "customs, policies and practices

also have violated Plaintiff's rights . . . to be free from discrimination on the basis of her sex."

Sec. Am. Compl., ¶¶ 92, 88.  Plaintiff's Opposition makes clear that this claim is also based a

theory of municipal liability as articulated by Monell and its progeny.  See Opp. at 22-23.

Plaintiff argues that her allegations that "the District has a custom of responding inappropriately

to allegations of sexual misconduct, and a custom of cultivating an atmosphere where teachers

are afraid to report abuse" support this claim.  Id. at 23 (citing Sec. Am. Compl., ¶¶ 83-84).  She

further argues that she "knows that the District responded inadequately after becoming aware of

her sexual abuse, and she alleges that other females encountered identical problems."  Opp. at

23.  Finally, Plaintiff cites the District's decision to "acquit[] Weismiller of any misconduct" and

Chancellor Rhee's description of the results of the investigation as a "he said, she said" as

evidence of intentional misconduct on the part of the District.  Id. at 22 (citing Sec. Am. Compl.,

¶¶ 38, 39, 83).

These allegations are insufficient to state a claim of municipal liability on the part of the

District.  First, as noted above, Plaintiff pleads no facts in support of her claim that the District

---

[1] Plaintiff actually pleads her claims under the "Equal Protection Clause of the Fifth Amendment," see Sec. Am. Compl., ¶¶ 88-89, which does not exist.  The Supreme Court has interpreted the Due Process Clause of the Fifth Amendment, however, to encompass the rights explicitly contained in the Equal Protection Clause of the Fourteenth Amendment.  See Bolling v. Sharpe, 347 U.S. 497 (1954) (applying Equal Protection Clause to D.C. through Fifth Amendment's Due Process Clause in school segregation case); see also Dixon v. District of Columbia, No. 10-7178, 2011 WL 6368195 (D.C. Cir. Dec. 20, 2011).

has a custom of "cultivating an atmosphere where teachers are afraid to report abuse."  See

Section III.B.1.a.ii, *supra*.  While Plaintiff argues that "other females [have] encountered

identical problems" with "the District responding inadequately after becoming aware of . . .

sexual abuse," she does so for the first time in her Opposition to this Motion.  Opp. at 23.  This

allegation, let alone facts to support it, appear nowhere in her Second Amended Complaint and

thus cannot form a basis for her claim.  See Henthorne v. Dep't of the Navy, 29 F.3d 682, 688-89

(D.C. Cir. 1994).

The only evidence Plaintiff offers in support of her contention that the District has "a

custom, policy or practice of responding inappropriately to allegations of sexual misconduct that

injures female students" relates to the District's handing of Plaintiff's own sexual relationship

with Weismiller.  See Sec. Am. Compl., ¶ 83.  Yet Plaintiff points to no official District policy as

the alleged cause of this inappropriate response, and to the extent she bases her claim on the

existence of such a DCPS or District custom, she has failed to show more than one occurrence of

the practice, let alone a custom "so widespread as to have the force of law."  Brown, 520 U.S. at

403-04; see also Atchison v. District of Columbia, 73 F.3d 418, 421 (D.C. Cir. 1996) ("'[p]roof

of a single incident of unconstitutional activity is not sufficient to impose liability under Monell'

absent proof that the activity was caused by a municipal policy") (quoting City of Oklahoma

City v. Tuttle, 471 U.S. 808, 823-24 (1985)).  Finally, if Plaintiff bases her claim on the

District's decision "to acquit[] Weismiller of any misconduct," as explained in Section

III.B.1.a.iii, *supra*, the evidence she pleads is insufficient.

The second equal-protection violation Plaintiff alleges is based on her status as an

emotionally disturbed student.  She has pled that the District has "a custom, policy or practice of

inappropriately handing special education students, as demonstrated by the many failures at

Shadd, including fighting in the hallways and numerous statements by DCPS officials that the school is a disaster and should be closed." <u>See</u> Sec. Am. Compl., ¶ 85.  The District's customs, policies or practices, Plaintiff alleges, "have further violated Plaintiff's rights . . . in that Plaintiff, as an emotionally disturbed student, has been treated differently by the District of Columbia and DCPS than other special education students.  Specifically, Plaintiff has been placed at Shadd, which suffers from inadequate staffing and supervision, while other special education students have remained at other schools." <u>Id.</u>, ¶ 89.

Plaintiff does not plead a corresponding predicate constitutional violation against Weismiller, and it is not clear from the face of her Second Amended Complaint that this claim even relates to the same injury – sexual abuse or harassment resulting from her relationship with Weismiller – upon which she bases her other claims in the case.  In response to the District's assertion that she improperly pleads her equal-protection claim based on "generalized grievances," however, Plaintiff argues that "generalized complaints" are not the basis for this claim.  Opp. at 25-26 (citing Mot. at 20).  Rather, she "alleges that she was sexually abused by a Shadd teacher who initiated sex with her in and outside of his classroom on numerous occasions, causing her to become pregnant and give birth to a daughter." <u>Id.</u>  She "mentions the deplorable educational environment at Shadd only to illustrate that the District Defendants had no regard for safety, well-being, and educational advancement, which ultimately resulted in Plaintiff being the victim of sexual misconduct." <u>Id.</u> at 26.  "Weismiller's sexual misconduct," Plaintiff argues, "is traceable to, among other things, the District's custom and practice of responding inappropriately to allegations of sexual abuse and its failure to reprimand Weismiller." <u>Id.</u>

As just explained above, Plaintiff has not alleged facts sufficient to support her allegations that the District had a custom of responding inappropriately to allegations of sexual

abuse or that its failure to reprimand or terminate Weismiller can result in § 1983 liability.  Even

were the Court to assume that Plaintiff is attempting to plead a municipal-liability claim based on

the District's policy of enrolling emotionally disturbed students in Shadd while sending other

special education students to other conceivably (in Plaintiff's view) less dysfunctional schools,

she pleads nothing to suggest that that policy was the "moving force" behind Weismiller's

alleged sexual abuse.  Canton, 489 U.S. at 388-89.  No causal connection exists.  Nor is there

anything beyond the speculative that could link the "educational environment" at Shadd to

Weismiller's actions.  The Supreme Court has held that, "[a]t the very least there must be an

affirmative link between the policy and the particular constitutional violation alleged."  City of

Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).  Plaintiff has thus failed to plead a § 1983

claim based on an equal-protection violation arising from her status as an emotionally disturbed

student.

> 2.    *20 U.S.C. § 1681*

Plaintiff's final federal claim alleges a violation of 20 U.S.C. § 1681, commonly known

as Title IX.  Section 1681 provides:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to
> discrimination under any education program or activity receiving Federal
> financial assistance . . . .

An injured plaintiff may obtain monetary damages for a violation of Title IX through a private

suit against a school district.  See Cannon v. University of Chicago, 441 U.S. 677, 725 (1979);

Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 76 (1992).  The Supreme Court has

interpreted Title IX to encompass and prohibit "a teacher's sexual harassment of a student."

Gebser v. Lago Vista Independent School District, 524 U.S. 274, 281 (1998) (citing Franklin,

503 U.S. 60).  In such cases, damages may only be recovered from the school district if an

"appropriate person" – *i.e.*, "an official of the school district who at a minimum ha[d] authority
to institute corrective measures on the district's behalf" – "ha[d] actual notice of, and [wa]s
deliberately indifferent to, the teacher's misconduct." Gebser, 524 U.S. at 277, 290. In other
words, a damages claim under Title IX will not lie against the District based on *respondeat
superior* liability or merely constructive knowledge of a teacher's sexual harassment of a student.
Id. at 285. To state a claim under § 1681, therefore, Plaintiff must plead facts sufficient to allege
1) actual notice 2) to an appropriate person and 3) deliberate indifference.

The District challenges the Second Amended Complaint at all three stages of the Title IX
analysis, arguing that Plaintiff has not established actual notice to a District official or deliberate
indifference. Plaintiff contends that she has done so. In her Second Amended Complaint,
Plaintiff alleges that the "District of Columbia and DCPS had actual knowledge of Weismiller's
sexual relationship with Plaintiff, as shown by the pregnancy test she took at the school's request
in December 2008 and through interviews of teachers and staff who had seen Weismiller and
Plaintiff alone together in his classroom." Sec. Am. Compl., ¶ 94 (emphasis added). She further
alleges that the District and DCPS, "by failing to stop the sexual relationship before Plaintiff
became pregnant and by failing to discipline Weismiller after conducting a formal investigation,
exhibited deliberate indifference toward Plaintiff." Id., ¶ 95 (emphasis added). A closer look
shows Plaintiff claims too much.

In her Second Amended Complaint, Plaintiff alleges that in December 2008,
approximately one month after her sexual relationship with Weismiller began, she "reported to
school personnel . . . that she believed she was pregnant." Id., ¶¶ 19, 37. These school personnel
"sent her to the health office, which administered a pregnancy test that came back negative." Id.,
¶ 37. Plaintiff was 18 years old at the time. See id., ¶ 13. Notably, she does not allege that, in

December 2008, she told anyone, either at the school or elsewhere, that she was having a sexual

relationship with a teacher or that this relationship was why she believed she was pregnant.

Additionally, Plaintiff does not identify the "school personnel" she approached and does not

plead any facts to suggest that they included any school district official with "authority to

institute corrective measures."  Gebser, 524 U.S. at 277.  The Court thus cannot conclude that, in

December 2008, anyone at Shadd other than Plaintiff and Weismiller, let alone "an appropriate

person" for Title IX purposes, had actual knowledge of the nature of their relationship.

Plaintiff pleads that her sexual relationship with Weismiller ended in April 2009, see Sec.

Am. Compl., ¶ 20, and the District maintains that an appropriate person must have had actual

knowledge of the relationship prior to its conclusion to support a claim under Title IX.  The

District argues:

> Although Plaintiff acknowledges that DCPS initiated an investigation in
> May 2009 after purportedly learning that Plaintiff was pregnant, Plaintiff's
> Second Amended Complaint identifies no DCPS official who had actual
> knowledge of the sexual encounters before that time but failed to respond,
> nor does Plaintiff allege that the sexual encounters continued after DCPS
> initiated its investigation.

Mot. at 24.  The District faithfully summarizes Plaintiff's factual pleadings on this question, and

there is certainly some legal support for its argument.  See, e.g., Rosa H. v. San Elizario

Independent School Dist., 106 F.3d 648 (5th Cir. 1997).  In Rosa H., the Fifth Circuit found:

"Under the standard we announce today, the school district can be liable, if at all, only for the

damages caused by its intentional acts of discrimination. If the conduct has ceased by the time a

supervisory employee of the sort we describe here learns of it, there is no liability in a private

suit for that conduct based on some personal failure to take 'proper remedial action' thereafter."

Id. at 661; see also Davis v. DeKalb County School District, 233 F.3d 1367, 1372 (11th Cir.

2000) (finding school district lacked actual knowledge required by Title IX that teacher sexually

harassed students during the 1993-94 school year when school official did not learn of harassment until September 1994).  The Court could end its analysis here but will not since Plaintiff has also failed to plead that the District acquired actual knowledge of Plaintiff's sexual relationship with Weismiller through its May 2009 investigation.

Even if Plaintiff maintains that the District and DCPS obtained actual knowledge of her relationship with Weismiller in May 2009 through interviews of Shadd teachers and staff conducted after Plaintiff became pregnant, the facts she pleads in her Second Amended Complaint again undermine the inferences she asks the Court to draw.  In May 2009, she alleges DCPS "initiate[d] an investigation into the sexual relationship between Weismiller and Plaintiff." Sec. Am. Compl., ¶ 29.  Plaintiff summarizes the results of DCPS's interviews as follows: "Every witness who was interviewed by the DCPS stated either that they had seen Plaintiff and Weismiller alone together in his classroom, or had heard rumors that the two were having a sexual relationship."  Id., ¶ 31.  Plaintiff identifies five teachers or staff members who confirmed these reports.  Id., ¶¶ 32-36.  One of these witnesses reported seeing Plaintiff in Weismiller's classroom "during the lunch period, with the lights off," and two reportedly expressed their concerns about the amount of time Weismiller was spending with Plaintiff and the rumors they had heard of a sexual relationship between the two.  Id., ¶¶ 32, 35-36.  Not one, however, reported observing inappropriate physical contact between Plaintiff and Weismiller, hearing from either party of the relationship, or learning solid facts to support its existence.  Although one teacher "entered Weismiller's classroom during lunch on at least two occasions" "to investigate the[] rumors" she had heard, she only reported finding Plaintiff and Weismiller in the room together, not that they appeared to be engaged in sexual conduct.  Id., ¶ 34.  Finally, Weismiller denied a having a sexual relationship with Plaintiff.  Id., ¶ 30.

Plaintiff does not even plead that she herself told anyone at Shadd or any other District official that she and Weismiller had a sexual relationship.  Although she does allege that she, "her daughter, and Weismiller have taken paternity tests, and the results are positive," she does not plead that she obtained this information before Weismiller was fired in October 2009 or even before she filed this lawsuit.[2]  Id., ¶ 22.

Former Chancellor Rhee certainly had no actual knowledge of Weismiller's sexual relationship with Plaintiff at any time before the filing of this lawsuit, let alone prior to Weismiller's termination from DCPS.  Nothing in the Second Amended Complaint suggests Rhee would have had any reason to know of the relationship while it was ongoing – i.e., in April 2009 or earlier.  The best Plaintiff can argue based on the facts that she pled is that school officials knew or should have known of the relationship, a level of knowledge clearly insufficient to satisfy the demanding Gebser standard.  See 524 U.S. at 285 (imposing liability based on school district's constructive knowledge of discrimination would "frustrate the purposes" of Title IX); see also Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 642 (1999) (The court in Gebser "declined the invitation to impose liability under what amounted to a negligence standard – holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known.  Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX.") (emphasis in original).  Similarly, in Baynard, the Fourth Circuit found that Malone, a school principal who had received multiple reports that a particular teacher had in

---

[2] Plaintiff does state in her Opposition that Weismiller took this paternity test in "late August 2010."  Opp. at 2.  While the Court will not consider facts appearing for the first time in Plaintiff's Opposition brief, were it to do so, the timing of the paternity test would further cut against Plaintiff's argument that the District had actual knowledge of her sexual relationship with Weismiller 1) at the time it was occurring, 2) at the time DCPS conducted its investigation, or 3) prior to Weismiller's termination.

the past abused a student and was reported to be inappropriately touching a current student, did

not have actual knowledge of the abuse.  Id., 268 F.3d at 238.  The Fourth Circuit found:

"Although Malone certainly should have been aware of the potential for such abuse, and for this

reason was properly held liable under § 1983, there is no evidence in the record to support a

conclusion that Malone was in fact aware that a student was being abused."  Id. (emphasis in

original).  These facts are thus insufficient under Gebser to establish that anyone within DCPS

had actual knowledge of Weismiller's sexual relationship with Plaintiff.

     Even if the Court could infer that someone had actual knowledge, Plaintiff has not pled

that an "appropriate person" did.  Indeed, she does not even identify in her Second Amended

Complaint anyone within DCPS whom she alleges is an "appropriate person" for Title IX

purposes.  In her Opposition, she argues that "two teachers and numerous staff members

suspected Weismiller's sexual misconduct" and cites T.Z. v. City of New York, 634 F. Supp. 2d

263, 269 (E.D.N.Y. 2009), for the proposition that a teacher can be an "appropriate person"

under Title IX.  Opp. at 26-27.  The Court is not persuaded.  Even if this suspicion could equate

with actual knowledge, which it cannot, Plaintiff still fails the "appropriate person" test.

     Gebser makes clear that the "appropriate person" must be "an official who at a minimum

has authority to address the alleged discrimination and to institute corrective measures on the

recipient's behalf."  524 U.S. at 290.  Plaintiff does not allege in her Second Amended Complaint

that these teachers and staff members had the authority to take corrective action against

Weismiller and does not explain in her Opposition why or how she believes this to be the case.

Plaintiff's citation to T.Z. does not support her cause.  While this Court is free to disagree with

T.Z., the facts of that case can also be distinguished from those here.  In T.Z., a group of students

sexually assaulted another student during class.  See 634 F. Supp. 2d at 266.  The court described

Raskin, the classroom teacher, as "a school official with the authority to intervene." Id. at 269. This Court does not opine on whether this type of "authority to intervene" is sufficient to establish Title IX liability in peer-to-peer sexual harassment cases.

The Court agrees, however, with the Courts of Appeals of other Circuits that have decided that, in the context of student-teacher sexual harassment, the "authority to take corrective action" means the ability to fire or discipline the teacher in question. See Baynard, 268 F.3d at 238-39; Rosa H., 106 F.3d at 660. Addressing the question of whether a school principal was an appropriate person under Title IX, under Virginia law, the Fourth Circuit found: "[N]o rational jury could find that [the principal] was invested with the power to take corrective action on behalf of the [school board]. . . . [W]hether a supervisory employee may be viewed as the proxy of the school district depends upon whether the district has delegated to that employee the traditional powers of an employer, e.g., the authority to hire and terminate employees." Baynard, 268 F.3d at 238-39. The Fifth Circuit has identified the relevant persons as "those school employees in the chain of command whom the school board has appointed to monitor the conduct of other employees and, as distinguished from reporting to others, remedy the wrongdoing themselves." Rosa H., 106 F.3d at 660. These interpretations are consistent with the purpose stated in Gebser – that a federal funding recipient not be subject to liability under Title IX without notice of the discriminatory conduct and the opportunity to take remedial action. Id. at 285-86, 290. The teachers and staff members Plaintiff points to in her Opposition are not such persons.

Independently, Plaintiff's Title IX claim cannot survive because, even if she had adequately alleged that an appropriate person within DCPS had actual knowledge of her sexual relationship with Weismiller, she has not pled sufficient facts to support her position that the

26

District responded with deliberate indifference.  See Sec. Am. Compl., ¶ 95.  A school district is

not deliberately indifferent to reports of sexual harassment of a student unless its "response was

'clearly unreasonable in light of the known circumstances.'"  Power *ex rel*. Power v. Gilbert

Public Schools, No. 10-15149, 2011 WL 4898079, at *1 (9th Cir. Oct. 14, 2011) (quoting Davis,

526 U.S. at 648).  In Power, the Ninth Circuit found the school district's response not

unreasonable where the evidence showed that school "officials timely and thoroughly

investigated and responded to each" of the plaintiffs' complaints.  Id.

Plaintiff has not pled facts that would allow the Court to draw a reasonable inference that

DCPS's response in this case was unreasonable in light of the known circumstances.  See J.M. *ex*

*rel.* Morris v. Hilldale Independent School District No. 1-29, 397 Fed. Appx. 445, at *7 (10th

Cir. 2010) (quoting Davis, 526 U.S. at 649) ("The Supreme Court . . . has made clear that '[i]n an

appropriate case, there is no reason why courts, on a motion to dismiss, . . . could not identify a

response as not clearly unreasonable as a matter of law.'").  As Plaintiff has pled, "[A]fter

learning that [she] was pregnant" in May 2009, "DCPS initiate[d] an investigation into the sexual

relationship between Weismiller and Plaintiff."  Sec. Am. Compl., ¶ 29.  At least six teachers and

staff members at Shadd were interviewed, including Weismiller and one teacher who had

attempted to investigate rumors of a sexual relationship by entering Weismiller's classroom

during the lunch hour.  Id., ¶¶ 30-37.  According to Plaintiff, at the close of the investigation,

Rhee "said the statements by teachers and staff did not offer definitive proof of a sexual

relationship" and "characterized the situation as 'a he said, she said.'"  Id., ¶ 39.  Ultimately,

DCPS "found Weismiller not liable for 'grave misconduct in office' and not liable for 'other

failure of good behavior during duty hours which is of such a nature that it causes discredit to the

employee's agency or employment.'"  Id., ¶ 38.  In light of the breadth of this investigation and

its inconclusive results, DCPS can hardly be said to have acted with deliberate indifference by not firing Weismiller then.  Finally but significantly, Plaintiff "does not allege that further sexual harassment occurred as a result of [DCPS's] deliberate indifference."  Escue v. Northern OK College, 450 F.3d 1146, 1155 (10th Cir. 2006).  The Supreme Court has stated that "the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  Davis, 536 U.S. at 645, quoted in Escue, 450 F.3d at 1155.

Given an appropriate person's lack of actual knowledge of Plaintiff's sexual relationship with Weismiller, the extent of the investigation the District conducted, and the fact that the relationship had ended before DCPS began its investigation, the Court finds as a matter of law that Plaintiff has failed to adequately plead her Title IX claim.

C.      State Claims

Having prevailed on Plaintiff's federal claims, the District next argues that Plaintiff's common law causes of action against it "should be dismissed for failure to provide proper notice of her claims" under D.C. Code § 12-309.  See Mot. at 24.  Plaintiff's common law claims against the District include negligent supervision, negligent hiring and retention, intentional infliction of emotional distress, and breach of fiduciary duty.

Section 12-309 of the D.C. Code states:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in the regular course of duty, is a sufficient notice under this section.

Compliance with this notice requirement is a mandatory prerequisite for everyone with a tort claim against the District of Columbia.  See Blocker-Burnette v. District of Columbia, 730 F. Supp. 2d 200, 203 (D.D.C. 2010); District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C.

1995).  Because filing suit against the District of Columbia represents a waiver of the District's

sovereign immunity, "section 12-309 is to be construed narrowly against claimants."  Dunmore,

662 A.2d at 1359; see also Blocker-Burnette, 730 F. Supp. 2d at 203 ("Courts should strictly

construe Section 12-309's notice requirements." (quoting Day v. District of Columbia Dep't of

Consumer & Regulatory Affairs, 191 F. Supp. 2d 154, 158 (D.D.C. 2002)).

Nowhere in her Second Amended Complaint does Plaintiff allege that she submitted

written notice of the approximate time, place, cause, and circumstances of the injury or damages

directly to the Mayor of the District of Columbia.  Instead, she alleges that "[t]he District of

Columbia received notice of the circumstances giving rise to the claims herein, as required by

D.C. Code § 12-309, pursuant to an investigative report completed by DCPS's Division of

School Security on August 21, 2009" (DCPS Report) and "in a May 13, 2010 letter."  See Sec.

Am. Compl., ¶ 12.  Plaintiff alleges that the investigation resulting in the DCPS Report

commenced in May 2009.  Id., ¶ 29.  In her Opposition, Plaintiff argues that the DCPS Report

"was circulated to DCPS' legal department, among other school officials," and "that Shadd

Principal Alonzo Randall, the District of Columbia Metropolitan Police Department, and the

United State's [sic] Attorney's Office were all told about the investigation."  Opp. at 7.  Plaintiff

has not alleged that she, her agent, or her attorney sent the DCPS Report to the Mayor, or that the

Metropolitan Police Department issued a written report in response to being told about the

investigation.

Plaintiff cites Allen v. District of Columbia, 533 A.2d 1259, 1262 (D.C. 1987), for the

proposition that "written notice by a claimant should not be a prerequisite to legal action if, in

fact, *actual notice* in the form of a police report has been received by the District," and suggests

that the DCPS Report is analogous to a police report in this respect.  Opp. at 6-7.  The Court

disagrees.  As courts in this District have previously held, "Only two types of notice can satisfy the requirements of Section 12-309[]: (1) a written notice to the Mayor of the District of Columbia, or (2) a police report prepared in the regular course of duty."  Blocker-Burnette, 730 F. Supp. 2d at 204 (citing Brown v. District of Columbia, 251 F. Supp. 2d 152, 165 (D.D.C. 2003)).  Courts have thus previously found that neither complaints made to District of Columbia agencies other than the Mayor's office nor reports of investigations prepared by agencies other than the Metropolitan Police Department qualify as notice under § 12-309.  See Blocker-Burnette, 730 F. Supp. 2d at 204 ("Because the notice requirement must be strictly construed . . . the Court cannot conclude that plaintiff's filing with the [District of Columbia Office of Human Rights] substituted for written notice to the Mayor."); Brown v. District of Columbia, 251 F. Supp. 2d 152, 165 (D.D.C. 2003) (finding plaintiff failed to comply with § 12-309 and granting summary judgment where plaintiff sent letter to MPD Chief, D.C. Corporation Counsel, Police and Fire Clinic, and attorney in United States Attorney's Office, but not to the Mayor, and did not file a police report).  The District of Columbia Court of Appeals has concluded that the "statutory exception [in § 12-309] to formal notice [to the Mayor] is limited to police reports." Campbell v. District of Columbia, 568 A.2d 1076, 1078 (D.C. 1990) (citing Jenkins v. District of Columbia, 379 A.2d 1177, 1178 (D.C. 1977) (finding Fire Department report not equivalent to police report for purposes of § 12-309)).  In the only case cited by the parties addressing the question of whether a DCPS Division of School Security investigative report provides the requisite notice under § 12-309, a court found that it did not.  See Whittaker v. District of Columbia, No. 01-1403, 2002 U.S. Dist. Lexis 27801, at *16-21 (D.D.C. 2002).

        Plaintiff identifies two additional written documents that she alleges put the District of Columbia on actual notice of her claims – an April 13, 2010, email from Plaintiff's counsel to

District of Columbia Attorney General Peter Nickles, and a May 13, 2010, letter from Plaintiff's

counsel to the District of Columbia Office of Risk Management.  <u>See</u> Opp. at 7, 9.  Plaintiff

mentions the April 13 email for the first time in her Opposition, and she pleads in her Second

Amended Complaint nothing about the May 13 letter beyond the fact that she "gave the District

of Columbia notice of this lawsuit" therein.  <u>See</u> Sec. Am. Compl., ¶ 12.  She does not allege that

either of these documents was sent to the Mayor.  Even if the Court could consider these

additional facts, it is undisputed that both of these documents were sent more than six months

after Plaintiff's alleged injury or damage was sustained.

Finally, Plaintiff's reliance on <u>Hurd v. District of Columbia</u>, 106 A.2d 702 (D.C. 1954),

and <u>Rieser v. District of Columbia</u>, 563 F.2d 462 (D.C. Cir. 1977), does not alter the outcome.

In <u>Hurd</u>, the plaintiff did provide notice, via a letter to the District of Columbia commissioners,

under § 12-309.  The sufficiency of the notice was at issue because the plaintiff had incorrectly

listed the address of the building outside of which she had fallen.  <u>See</u> 106 A.2d at 704-05.

Based on the description of the location, coupled with the erroneous address, however, the court

found that there was "no doubt that the District could have located the place of injury," and that

the "statutory purpose" of § 12-309 had been satisfied.  <u>Id.</u> at 704.  In <u>Rieser</u>, the plaintiff had a

police report – the acceptable alternative to a notice to the mayor – and the question was again

one of sufficiency.  <u>See</u> 563 F.2d at 476.  The District complained that "it was not afforded

notice of the causal connection between the injury and any negligent acts of its agents, and that it

was entitled to but did not receive timely notice of Rieser's intention to bring suit."  <u>Id.</u>  Finding

that this additional information was not required by the statute, the court found Rieser's notice to

the District sufficient.  <u>Id.</u>  Unlike the present case, the question in both <u>Hurd</u> and <u>Rieser</u> was not

whether those plaintiffs had complied with § 12-309 at all, but whether they had done so

sufficiently.  Plaintiff cannot claim to have done so at all.  For this reason, Plaintiff's common law claims against the District must be dismissed.

## IV.     Conclusion

For the reasons articulated herein, an Order accompanying this Memorandum Opinion will grant the District Defendants' Motion to Dismiss.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 8, 2012